14693/DVO/TCN                                          ARDC#06205204

## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

| | | |
|---|---|---|
| DIANE RUDNICK, Individually and as Special Administrator of the Estate of Brian Rudnick, Deceased, | ) ) ) ) | |
| Plaintiff(s), | ) ) | *Case No.* 08 CV 1921 |
| v. | ) ) | |
| Prairie Material Sales, Incorporated, a Corporation and Nabil Loudani, | ) | |
| Defendant(s). | | |

### PLAINTIFF'S FEDERAL RULE OF CIVIL PROCEDURE 26(a)(1) DISCLOSURES

NOW COMES the Plaintiff, DIANE RUDNICK, Individually and as Special Administrator of the Estate of Brian Rudnick, Deceased, by her attorneys, ANESI, OZMON, RODIN, NOVAK & KOHEN, LTD., and answers her Initial Rule 26(a)(1) Disclosures, as follows:

**1.**          **Witnesses:**

**Diane Rudnick**
**2182 Madison Street**
**Portage, IN 46368**

Mrs. Rudnick is expected to testify to the loss of life of her husband, loss of support and loss to society. Mrs. Rudnick will also testify as funeral expenses and damages she sustained including but not limited to Plaintiff's decedent's life, health, work and activity prior to the date of death; the relationship between decedent and herself; plaintiff's loss of consortium, love and affection; the relationship between plaintiff's decedent and the children and their loss of society.

**A. Batiz, Jr.**
**Chicago Fire Department**
**Address Unknown**

Mr. Batiz will testify as to his knowledge of this occurrence including his observations at the scene of the accident upon arrival, his care and treatment of Plaintiff as a result of his injuries upon arrival at the scene, as well as ambulance transportation to the Cook County Medical Examiner.  Mr. Batiz will also testify consistent with the information contained in the Chicago Fire Department Report dated January 18, 2008, and run #080180966; his knowledge of the Glasgow Coma Score; and his knowledge as to the custom and practice of filling forms as a paramedic/emergency medical technician.


**C. Bullard**
**Chicago Fire Department**
**Address Unknown**

Mr. Bullard will testify as to his knowledge of this occurrence including his observations at the scene of the accident upon arrival, his care and treatment of Plaintiff as a result of his injuries upon arrival at the scene, as well as ambulance transportation to the Cook County Medical Examiner.  Mr. Bullard will also testify consistent with the information contained in the Chicago Fire Department Report dated January 18, 2008, and run #080180966; his knowledge of the Glasgow Coma Score; and his knowledge as to the custom and practice of filling forms as a paramedic/emergency medical technician.


**Dr. Tera Jones**
**Medical Examiner's Office**
**2121 W. Harrison Street**
**Chicago, IL**

Dr. Jones is expected to testify as to the external and internal examination of the decedent.  He is expected to testify as to the evidence of the injuries sustained as a result of the occurrence.  He is expected to testify as to any photographs and/or x-ray films that he had taken during the autopsy of Brian Rudnick.  Dr. Jones will testify as to the findings of his reports and autopsy of Brian Rudnick.


**Ms. Ada Mclin**
**Chicago Police Department**
**3510 S. Michigan Ave**
**Chicago, IL 60653**

Ms. Mclin is expected to testify regarding the accident involving the Plaintiff, Mr. Rudnick, including her knowledge of the occurrence on the day of the accident, observations at and of the scene of the occurrence, damages sustained by the Plaintiff, and the applicable laws, statues, customs, and practices relative to industrial accidents in the State of Illinois.  Ms. Mclin will also testify as to her observations at the scene of the occurrence.  She is expected to testify consistent with the respective investigation reports, traffic crash reports, or any other reports

that were generated in relation to the occurrence alleged in Plaintiff's Complaint at Law. She is further expected to testify as to any conversations that she had with any individuals on the jobsite; the photographs if any were taken of the jobsite; and her investigation of the jobsite. Ms. Mclin will also testify as to her training, education, and experience.

**Mr. Roman Czygryn**
**Chicago Police Department – Major Accident Investigation Unit**
**3510 S. Michigan**
**Chicago, IL 60653**

Mr. Czygryn is expected to testify regarding the accident involving the Plaintiff, Mr. Rudnick, including his knowledge of the occurrence on the day of the accident, observations at and of the scene of the occurrence, damages sustained by the Plaintiff, and the applicable laws, statues, customs, and practices relative to industrial accidents in the State of Illinois. Mr. Czygryn will also testify as to his observations of the scene of the occurrence. He is expected to testify consistent with the respective investigation reports, traffic crash reports, or any other reports that were generated in relation to the occurrence alleged in Plaintiff's Complaint at Law. He is further expected to testify as to any conversations that he had with any individuals or witnesses related to the occurrence; the photographs if any that were taken of the jobsite; and his investigation of the jobsite. Mr. Czygryn will also testify as to his training, education, and experience.

**Mr. Brad J. Becker**
**OSHA**
**1600 167th Street, Suite 9**
**Calumet City, IL**

Mr. Becker will testify as to his knowledge of the project; the parties involved and their relationship to the work being performed on the project; the responsibilities of the parties to OSHA and OSHA standards and regulations on the jobsite and if those standards were followed or violated. He is expected to testify as to his post occurrence inspection, photographs, observations on the jobsite, any conversation they had with any of the parties, and documents that were reviewed or prepared as a result of the occurrence on January 18, 2008. Mr. Becker is also expected to testify regarding any photographs that he may have taken or reviewed. Mr. Becker's will also testify as to his basis for his opinions that include his education, training, background, experience of OSHA safety and construction safety, interviews and conversations on the site as identified in his report.

**Ms. Sophia Chin**
**1801 S. Michigan Ave**
**Chicago, IL**

Ms. Chin is expected to testify regarding her knowledge of this occurrence. She will testify as to the facts and circumstances regarding this occurrence, her observations upon arrival at the scene of the occurrence including that fact that she ran up to Mr. Brian Rudnick after the accident occurred; called 911 emergency services and upon arrival she checked Mr. Rudnick's pulse. Ms. Chin will also testify that she is a resident physician at the University of Illinois Hospital. She will testify that she was stopped by a construction worker, Mr. Rudnick, from the site in order for a cement truck to pull out. She will testify that Mr. Rudnick was standing in the southbound lane near the double yellow line that divides north and south bound Michigan Avenue. The construction worker, Mr. Rudnick, raised his right hand to stop the traffic when she saw a cement truck start to pull out from the site. She is expected to testify that as the truck she saw was turning left she saw legs pop up from underneath the rear driver's side tire of the cement truck and then saw the rest of the body come out from under the truck. She will testify that when she saw Mr. Rudnick's body in the road that it was close to the double yellow lines in the road. Ms. Chin will also testify that it was cold outside and the roads were dry in the area that this accident occurred. She is expected to further testify from what she observed that the defendant driver had a clear and unobstructed view of Plaintiff's decedent and cut his turn too short and ran Plaintiff, Brian Rudnick, over.


**Mr. Richard Norton**
**Address Unknown**

Mr. Norton is expected to testify regarding his knowledge of this occurrence including the facts and circumstances surrounding this occurrence and his observations upon arrival at the scene of the occurrence. He will testify as to any and all observations, conversations, and/or events perceived while at the scene on the date of the incident or at any other time thereafter. Mr. Norton will also testify that Mr. Rudnick walked onto the south bound lanes of Michigan Avenue and while facing north, Mr. Rudnick raised both of his hands to stop the southbound Michigan Avenue traffic. He will testify that while Mr. Rudnick stood in the street a cement mixer exited the work site, driving behind him to turn onto Michigan Avenue and that as the cement mixer entered the street Mr. Rudnick was dragged under the rear left wheels of the truck. He will testify that Mr. Rudnick's body jolted and the Mr. Rudnick fell backwards and to the left. He will also testify that Mr. Rudnick's legs, chest and head were crushed by the truck. He will testify that after the accident, he called 911 on his cell phone. Mr. Norton will also testify that the driver of the cement truck was unaware of the accident and continued driving. He will testify that his assistant, Mr. Jonathan Liss, starting to yell at the driver of the truck and the cement truck only stopped after hearing Mr. Liss yelling. Mr. Norton is also expected to testify that the defendant driver had a clear unobstructed view of Plaintiff's decedent and should have been able to observe him.


**Mr. Jonathan Liss**
**512 Lee Street, Apt 3-S**
**Evanston, IL 60202**

Mr. Liss is expected to testify regarding his knowledge of this occurrence including the facts and circumstances surrounding this occurrence and his observations upon arrival at the scene of the occurrence. He will testify as to any and all observations, conversations, and/or events perceived while at the scene on the date of the incident or at any other time thereafter. Mr. Liss will also testify that Mr. Rudnick walked onto the south bound lanes of Michigan Avenue and while facing north, Mr. Rudnick raised both of his hands to stop the southbound Michigan Avenue traffic. He will testify that at the same time a cement mixing truck was exiting the construction site approximately 10-20 feet behind of Mr. Rudnick and was turning to enter north bound Michigan Avenue. Mr. Liss will testify that Mr. Rudnick became entangled in the rear-left wheel of the cement truck. He will testify that the cement truck rolled over Mr. Rudnick and that he saw his head being flattened by the left wheel of the truck. He will testify that a young woman, Ms. Chin, rushed over to Mr. Rudnick and began to check his pulse. Mr. Liss will also testify that after the accident the cement truck was in the northbound lane of Michigan Avenue and was stopped at a red light. He will testify that the driver of the cement do not know that he had just ran someone over with his cement truck. Mr. Liss will testify that he yelled at the driver of the cement truck to alert him of the occurrence that just took place. He will testify that the driver seemed surprised and when the driver realized what happened that he backed up his cement truck and remained in the vehicle until the police and paramedics arrived at the scene. Mr. Liss will also testify that he approached a police officer to say that he had witnessed the accident and that the police officer told them to write down there names and contact information on a piece of paper. He will testify that he was not asked to make any form of a statement.

**Ms. Susan Klein**
**Address Unknown**

Ms. Klein is expected to testify regarding her knowledge of this occurrence including the facts and circumstances surrounding this occurrence and her observations upon arrival at the scene of the occurrence. She will testify as to any and all observations, conversations, and/or events perceived while at the scene on the date of the incident or at any other time thereafter. Ms. Klein will also testify that Mr. Rudnick walked onto the south bound lanes of Michigan Avenue and while facing north, Mr. Rudnick raised both of his hands to stop the southbound Michigan Avenue traffic. She will testify that Mr. Rudnick then turned his back and began to waive a cement mixer that was exiting the construction site. Ms. Klein will testify that as the cement mixer started to exit the jobsite that the truck hit and rolled over Mr. Rudnick. She will testify that after the accident, she called 911 on her cell phone. Ms. Klein will also testify that the driver of the cement truck was unaware of the accident and continued driving. She will testify that Mr. Jonathan Liss, starting to yell at the driver of the cement truck and the cement truck only stopped after hearing Mr. Liss yelling.

**Mr. Juan Huerta**
**419 W. Nippersink**
**Round Lake, IL 60073**

Mr. Huerta is expected to testify regarding his knowledge of this occurrence including the facts and circumstances surrounding this occurrence and his observations upon arrival at the scene of the occurrence. He will testify as to any and all observations, conversations, and/or events perceived while at the scene on the date of the incident or at any other time thereafter.

**Mr. Richard Sherman and/or Person Most Knowledgeable**
**Construction & General Laborers' District Council, Local #4**
**999 McClintock Drive**
**Suite 300**
**Burr Ridge, IL 60527**

Mr. Sherman or a representative is expected to testify as to the union wage scale and benefits received by the Plaintiff, Mr. Rudnick, as a member of Local #4 as well as past (covering time periods relative to this lawsuit), present and future wage and benefit scales. He will also testify as to 1.) the customs and practices for flaggers in the construction field; 2.) what is required, including the duties for a driver when entering and exiting a construction site; 3.) the wage and benefit scale; 4.) the amount of hours worked and recorded by Mr. Rudnick through the union; 5.) work availability for both present and for foreseeable future; and 6.) pension credits received as a result of hours worked by the Plaintiff.

**President and/or Person Most Knowledgeable**
**Walsh Construction Company**
**929 West Adams Street**
**Chicago, Illinois 60607**

The above-named individual is expected to testify as to the facts and circumstances surrounding the occurrence as he or she is aware of them; the relationship, responsibilities, and contractual responsibilities and safety interest of Walsh Construction Company and Prairie Material Sales, Inc. He or she will testify as to the custom and practices and work being performed at the time of the occurrence; knowledge of safety policies and construction safety standards; knowledge of any conversations held and complaints made on the jobsite. He or she will testify as to the supervisory responsibility of the parties to this case and custom and protective issues related to the entered and exiting of trucks and/or vehicles from the jobsite. He or she is also expected to testify that the defendant Nabil Loudani duties included 1.) proper vehicle speed when entering and exiting jobsite; 2.) sounding the truck's horn to give warning; 3.) giving proper notice to jobsite employees to ensure a safe exit from the premises; 4.) not running over the flagger, Mr. Rudnick. He or she will testify that Nabil Loudani failed to perform his duties and responsibilities and that a result, Brian Rudnick died. They will further testify that the safe, suitable and proper way to exit the jobsite while driving a cement truck

would be to sound the horn, drive with caution at a reduced rate of speed, and to alert the director of the traffic of his exit to the jobsite.

**Mr. Lenny McKinney**
**Walsh Construction Company**
**929 West Adams Street**
**Chicago, Illinois 60607**

Mr. McKinney is expected to testify as to the facts and circumstances surrounding the occurrence as he is aware of them; the relationship, responsibilities, and contractual responsibilities and safety interest of Walsh Construction Company and Prairie Material Sales, Inc. He will testify that he was the job steward on the jobsite at the time of the occurrence. He will testify as to the custom and practices and work being performed at the time of the occurrence; knowledge of safety policies and construction safety standards; knowledge of any conversations held and complaints made on the jobsite. He will testify as to the supervisory responsibility of the parties to this case and custom and protective issues related to the entered and exiting of trucks and/or vehicles from the jobsite. He is also expected to testify that the defendant Nabil Loudani duties included 1.) proper vehicle speed when entering and exiting jobsite; 2.) sounding the truck's horn to give warning; 3.) giving proper notice to jobsite employees to ensure a safe exit from the premises; 4.) not running over the flagger, Mr. Rudnick. He will testify that Nabil Loudani failed to perform his duties and responsibilities and that a result, Brian Rudnick died. He will further testify that the safe, suitable and proper way to exit the jobsite while driving a cement truck would be to sound the horn, drive with caution at a reduced rate of speed, and to alert the director of the traffic of his exit to the jobsite.

**Mr. Frederick Tidwell**
**Walsh Construction Company**
**929 West Adams Street**
**Chicago, Illinois 60607**

Mr. Tidwell is expected to testify as to the facts and circumstances surrounding the occurrence as he is aware of them; the relationship, responsibilities, and contractual responsibilities and safety interest of Walsh Construction Company and Prairie Material Sales, Inc. He will testify that he was the plaintiff's partner on the jobsite at the time of the occurrence. He will also testify as to his observation of the occurrence including his observations of the position of where Brian Rudnick was standing and from where the cement truck, driven by Nabil Loudani, was coming to exit the jobsite and the rate of speed the truck was exiting the jobsite at. He will testify as to the custom and practices and work being performed at the time of the occurrence; knowledge of safety policies and construction safety standards; knowledge of any conversations held and complaints made on the jobsite. He will testify as to the supervisory responsibility of the parties to this case and custom and protective issues related to the entered and exiting of trucks and/or vehicles from the jobsite. He is also expected to testify that the defendant Nabil Loudani duties

included 1.) proper vehicle speed when entering and exiting jobsite; 2.) sounding the truck's horn to give warning; 3.) giving proper notice to jobsite employees to ensure a safe exit from the premises;  4.) not running over the flagger, Mr. Rudnick. He will testify that Nabil Loudani failed to perform his duties and responsibilities and that a result, Brian Rudnick died.  He will further testify that the safe, suitable and proper way to exit the jobsite while driving a cement truck would be to sound the horn, drive with caution at a reduced rate of speed, and to alert the director of the traffic of his exit to the jobsite.


**Mr. Mike Vanhow**
**Walsh Construction Company**
**929 West Adams Street**
**Chicago, Illinois 60607**

Mr. Vanhow is expected to testify as to the facts and circumstances surrounding the occurrence as he is aware of them; the relationship, responsibilities, and contractual responsibilities and safety interest of Walsh Construction Company and Prairie Material Sales, Inc.  He will testify that he was part of the concrete crew on the jobsite at the time of the occurrence.  He will also testify as to his observation of the occurrence including his observations of the position of where Brian Rudnick was standing and from where the cement truck, driven by Nabil Loudani, was coming to exit the jobsite and the rate of speed the truck was exiting the jobsite at. He will testify as to the custom and practices and work being performed at the time of the occurrence; knowledge of safety policies and construction safety standards; knowledge of any conversations held and complaints made on the jobsite.  He will testify as to the supervisory responsibility of the parties to this case and custom and protective issues related to the entered and exiting of trucks and/or vehicles from the jobsite.  He is also expected to testify that the defendant Nabil Loudani duties included 1.) proper vehicle speed when entering and exiting jobsite; 2.) sounding the truck's horn to give warning; 3.) giving proper notice to jobsite employees to ensure a safe exit from the premises; 4.) not running over the flagger, Mr. Rudnick. He will testify that Nabil Loudani failed to perform his duties and responsibilities and that a result, Brian Rudnick died.  He will further testify that the safe, suitable and proper way to exit the jobsite while driving a cement truck would be to sound the horn, drive with caution at a reduced rate of speed, and to alert the director of the traffic of his exit to the jobsite.


**President/Person Most Knowledgeable**
**Prairie Material Sales**
**5717 N. East River Road**
**Chicago, IL 60656**

The above-named individual is expected to testify as to the facts and circumstances surrounding the occurrence as he or she is aware of them; the relationship, responsibilities, and contractual responsibilities and safety interest of Walsh Construction Company and Prairie Material Sales, Inc.  He or she will testify as to the custom and practices and work being performed at the time of the occurrence;

knowledge of safety policies and construction safety standards; knowledge of any conversations held and complaints made on the jobsite.  He or she will testify as to the supervisory responsibility of the parties to this case and custom and protective issues related to the entered and exiting of trucks and/or vehicles from the jobsite. He or she is also expected to testify that the defendant Nabil Loudani duties included 1.) proper vehicle speed when entering and exiting jobsite; 2.) sounding the truck's horn to give warning; 3.) giving proper notice to jobsite employees to ensure a safe exit from the premises; 4.) not running over the flagger, Mr. Rudnick. He or she will testify that Nabil Loudani failed to perform his duties and responsibilities and that a result, Brian Rudnick died.  They will further testify that the safe, suitable and proper way to exit the jobsite while driving a cement truck would be to sound the horn, drive with caution at a reduced rate of speed, and to alert the director of the traffic of his exit to the jobsite.


**Mr. Nabil Loudani**
**Prairie Material Sales**
**5717 N. East River Road**
**Chicago, IL 60656**

Mr. Loudani is expected to testify regarding his knowledge of this occurrence.  He will testify as to the facts and circumstances regarding this occurrence, his observations at the scene prior, at the time of and subsequent to the occurrence.  He will testify as to any and all observations, conversations, and/or events perceived while at the scene on the date of the incident or at any other time thereafter.   He is also expected to testify as to his conversations with Chicago Police Officer Ada Mclin after the accident occurred.  He will also testify that he was the driver of the cement truck that rolled over Brian Rudnick causing his death.  Mr. Loudani will testify that he 1.) failed to yield before entering Michigan Avenue, 2.) drove the cement truck at a speed which was greater than reasonable; 3.) failed to sound the horn of the cement truck to give warning; 4.) failed to stop vehicle properly to avoid collision with Brian Rudnick; 5.) failed to yield and avoid running over a pedestrian; 6.) failed to slow his vehicle down enough so as to avoid a collision with Plaintiff; 7.) failed to maintain a proper lookout for Brian Rudnick.  He will further testify that he was in the sole control and operation of his vehicle and was responsible to do so safely and to not run over Plaintiff, Brian Rudnick.

2.      Documents:

**The following list includes documents produced by the Plaintiff.  The following documents are attached as exhibits.**

1.  Robert J. Sheehy & Sons Funeral Homes

2.  Illinois Traffic Crash Report dated 1/18/08

3.  Hand written eye witness statement from Ms. Sophia Chin dated 2/1/08

4.  Typed eye witness statement from Mr. Richard Norton dated 1/23/08

5.  Typed eye witness statement from Mr. Jonathan Liss dated 1/23/08

6.  Typed eye witness statement from Ms. Susan Klein dated 1/23/08

7.  Hourly wage and fringe benefit union pay scale effective June 1, 2007 through May 31, 2008 from Construction & General Labors' District Council of Chicago and Vicinity for Local #4.

8.  Hourly wage and fringe benefit union pay scale effective June 1, 2008 through May 31, 2009 from Construction & General Labors' District Council of Chicago and Vicinity for Local #4.

**Plaintiff is in the process of collecting Police Reports, OSHA reports, statements of witnesses, birth certificates of his children, marriage license, and coroner's reports.  Investigation continues.**

**Plaintiff hereby adopts any and all documents disclosed by Defendants in their Rule 26 Disclosures as his own Rule 26 Disclosures and incorporates the content of any and all document disclosures made by Defendants as his own Rule 26 Disclosures.**

**3.        Damages:**

Plaintiff's damages as a result of this occurrence are ongoing and continuing; investigation continues.

**Plaintiff herein incorporates and adopts his medical disclosed witnesses and their respective opinions in Section 1 of this disclosure as part of Section 3 of disclosure.**

In addition, the Plaintiff also attaches itemized expenses to date below:

**Robert J. Sheehy & Sons Funeral Homes**
**9000 West 151st Street**
**Orland Park, IL 60462**

Date:                Amount:

1/22/08              $9,466.21

**4.        Insurance Agreements:**

Plaintiff has no knowledge of any Insurance Agreements.  Investigation continues.

**ANESI, OZMON, RODIN, NOVAK & KOHEN, LTD.**


 /s/ Daniel v. O'Connor
Attorneys for Plaintiff(s)


Daniel V. O'Connor
Telly C. Nakos
**ANESI, OZMON, RODIN, NOVAK & KOHEN, LTD.**
161 North Clark Street - 21st Floor
Chicago, IL  60601
312/372-3822

# Robert J. Sheehy & Sons
## Funeral Homes

**TELEPHONE  (708) 857-7878**

**9000 WEST 151st STREET**
**ORLAND PARK, ILLINOIS  60462**

**4950 WEST 79th STREET**
**BURBANK, ILLINOIS  60459**

Mrs. Diane  Rudnick
2182 Madison Street
Portage, IN 46368

January 22, 2008

Funeral Expenses for Brian J. Rudnick

Ledger:  208O6896

| | |
|---|---:|
| **PROFESSIONAL SERVICES** | |
| Services of Funeral Director & Staff | $ 2,530.00 |
| Embalming | $ 585.00 |
| Other Preparation of the Body | $ 305.00 |
| **OTHER STAFF AND RELATED FACILITIES** | |
| Facilities for Funeral Ceremony | $ 660.00 |
| Facilities for One Day Viewing | $ 720.00 |
| **TRANSPORTATION** | |
| Transfer of Remains to Funeral Home | $ 300.00 |
| Hearse | $ 495.00 |
| **MERCHANDISE** | |
| Casket- Mercury | $ 1,875.00 |
| Flowers | $ 475.00 |
| Acknowledgement Cards | $ 60.00 |
| Register Book | $ 50.00 |
| Prayer Cards | $ 255.00 |
| Cross | $ 30.00 |
| **CASH ADVANCES** | |
| Certified Copies of the Death Certificate | $ 68.00 |
| Church | $ 100.00 |
| Organist | $ 125.00 |
| Sun Times Death Notice | $ 271.28 |
| Tribune Death Notice | $ 328.60 |
| **STATE SALES TAX** | $ 233.33 |
| **TOTAL CHARGES** | $  9,466.21 |
| | |
| **BALANCE DUE:** | $  9,466.21 |



EXHIBIT

1

ILLINOIS TRAFFIC CRASH REPORT

CHICAGO POLICE DEPARTMENT

SR 1050C 310M (REPRINT 10/05)

Sheet ___ of ___ Sheets

*IF YES TO HAZMAT SPILL OR COM VEH ABOVE, COMPLETE COMMERCIAL VEHICLE AREA ON BACK OF FORM

EXHIBIT
2

2811656

HP 7/30/09

**COMMERCIAL VEHICLE**

96 NARRATIVE (Refer to vehicle by Unit No.)

Vehicle 1, A cement truck drive for Prairie Truck Company was working construction at 1410 S. Michigan. The victim who works for Walsh Construction at 1410 S. Michigan was guiding the truck into traffic when he slipped and fell under the wheels of the truck, causing fatal injuries CFD#1 on scene unable to resuscitate. Body transported by 172 to ME office. On Scene was inv. Niezabi-towski. Beat 130 Lt. Bianco Br. 3200, Lt Looney Mcsc. Ryan Deputy Chief of Patrol (CDAT 2)

PREPARED BY: SIGNATURE

STAR NO.    DATE (Day/Mo./Yr.)    APPROVED BY/SIGNATURE    STAR NO.

2811/0356

HP/30699

## 50 NARRATIVE (Refer to vehicle by Unit No.)

NOTIFICATION - OPERATIONS COMMAND HANDLER
1320 Hrs.
MAJOR Accidents - Bond 1320 Hrs -
Medical Examiner WAS notified #305 1400 Hrs.
News Affairs Taylor #1440 Hrs.
Deputy Chief Kersting

INDICATE NORTH BY ARROW

↑

**51 COMMERCIAL VEHICLE**

| | UNIT NO. |
|---|---|
| CARRIER NAME | 52 SOURCE |
| ADDRESS | ☐ Side of truck |
| | ☐ Papers |
| CITY  STATE  ZIP | ☐ Driver |
| | ☐ Log Book |

53 ID NUMBER
54 ID NUMBER  53 GVWR
US DOT ☐  ICCMC ☐  PLACARDED?
or State No.  State Name  ☐ None
☐ Yes ☐ No

54 HAZARDOUS MATERIALS: 1-Digit
55 HAZARDOUS MATERIALS:
Hazardous cargo released from truck?
(do not count fuel from vehicle fuel tank)
Violation of HAZMAT regs. contribute to crash?
Violation of MCS regs. contribute to crash?
Inspection form completed?

56 IDOT PERMIT #

☒ IN CITY OF / ☐ NEAREST CITY:_____ Miles N E S W of:
CHICAGO

VEHICLE CONFIGURATION  ☐  CARGO BODY TYPE _____  LOAD TYPE _____

INSERT APPLICABLE NUMBERS FROM CHOICES ON BACK OF TEMPLATE TWO

**59 HIT & RUN / WANTED DRIVER**

| SEX | RACE | AGE | HAIR COL. | DISTINGUISHING MARKS / CLOTHING DESCRIPTION |
|---|---|---|---|---|
| | | | | |

| SUSPENDED | | | | | UNIT NO. VEH. COLOR |
|---|---|---|---|---|---|

☐ TM CANNOT □ OFFENDER
☐ LETTER □ CONTACT RETURNED BY POST OFF.
☐ VEH. REGISTRATION UNAVAILABLE
☐ NO INVESTIGATIVE LEADS
☐ WARRANT OBTAINED
☐ INSUFFICIENT EVIDENCE FOR ARREST
☐ VEH. STOLEN-RD NO.
☐ OTHER (Specify)

| COURT RM | COURT DATE | TIME  AM PM | CHARGES | SUPV STAR NO. | IF CASE CLEARED HOW ☐ EXC. CLEARED ☐ ARREST/PROSECUTION | CITATION NO. | STAR NO. |
|---|---|---|---|---|---|---|---|

PREPARED BY - SIGNATURE   STAR NO.  DATE (Day-Mo.-Yr)   APPROVED BY-SIGNATURE   STAR NO.

VEHICLE CONFIGURATION
INSERT APPLICABLE NUMBERS FROM CHOICES ON BACK OF TEMPLATE TWO
CHICAGO
CARGO BODY TYPE _____  LOAD TYPE _____



# CONTRIBUTORY CAUSE CODES

| CODE | CAUSE TYPE |
|------|-----------|
| 01 | Exceeding authorized speed limit |
| 02 | Failing to yield right-of-way |
| 03 | Following too closely |
| 04 | Improper overtaking/passing |
| 05 | Driving on wrong side/wrong way |
| 06 | Improper turning/no signal |
| 07 | Turning right on red |
| 08 | Under the influence of alcohol/drugs (use when arrest is effected) |
| 08 | Equipment - vehicle condition |
| 10 | Weather |
| 11 | Road engineering/surface/marking defects |
| 12 | Road construction/maintenance |
| 13 | Vision obscured (signs, tree limbs, buildings, etc.) |
| 14 | Driving skills/knowledge/experience |
| 15 | Physical condition of driver |
| 17 | Unable to determine |
| 18 | Had been drinking (use when arrest is not made) |
| 19 | |

| CODE | CAUSE TYPE |
|------|-----------|
| 20 | Improper lane usage |
| 21 | Animal |
| 22 | Disregarding yield sign |
| 23 | Disregarding stop sign |
| 24 | Disregarding other traffic signs |
| 25 | Disregarding traffic signals |
| 26 | Disregarding road markings |
| 27 | Exceeding safe speed for conditions |
| 28 | Failing to reduce speed to avoid crash |
| 29 | Passing stopped school bus |
| 30 | Improper backing |
| 32 | Evasive action due to animal, object, nonmotorist |
| 40 | Distraction - from outside vehicle |
| 41 | Distraction - from inside vehicle |
| 42 | Distraction - operating a wireless phone |
| 50 | Operating vehicle in erratic, reckless, careless, negligent or aggressive manner |
| 99 | Not applicable |

**Select a Primary Contributory Cause from the list above and enter the corresponding two-digit code in the appropriate field near the lower right corner on the front of the crash report form. When appropriate, enter a Secondary Contributory Cause code accordingly.**

## Definitions

Primary Contributory Cause - The factor which is most significant in causing the crash, as determined by officer judgement.

Secondary Contributory Cause - The second most significant factor contributing to the crash, as determined by officer judgement.

## Example

You determine that vehicle speed is the most significant cause of the crash and wireless phone use is the second most significant cause of the crash. Enter 01 in the "PRIMARY" field and 42 in the "SECONDARY" field.

SR 1050C 310M (REPRINT 10/05)

SR 1000CB 310M (REPRINT 10/05)

Printed by authority of the State of Illinois







**INTERSECTION RELATED:** If the crash occurred because of the intersection, regardless of the exact location, it is considered intersection related.

**PRIVATE PROPERTY:** A private property crash must originate and occur on private property.

## SAFETY EQUIPMENT USED (SAFT)
1 None/present
2 Seat belts used
3 Seat belts not used
4 Helmet used
5 Helmet not used
6 Child restraint used
7 Child restraint not used
8 Child restraint used/improperly
9 Unknown/NA

## AIR BAG DEPLOYED (AIR)
1 With seat belt
2 Without seat belt
0 Unknown/NA

## EJECTION OR EXTRICATION (EJCT)
1 None
2 Totally ejected
3 Partially ejected
4 Trapped/extricated
9 Unknown

## INJURY CLASSIF. (INJ)
K Fatal
A Incapacitating injury
B Nonincapacitating injury
C Reported, not evident
O No indication of injury

## VEHICLE CONFIGURATION (Choose Applicable Number)

| | | | |
|---|---|---|---|
| 1 Bus | 4 Truck/trailer | 7 Tractor/doubles | |
| 2 Single unit truck, 2 axles, 6 tires | 5 Truck/tractor | | |
| 3 Single unit truck, 3 or more axles | 6 Tractor/semi-trailer | 9 Unknown heavy truck | |

### CARGO BODY TYPE (Choose Applicable Number)

| | | |
|---|---|---|
| 1 Bus | 4 Flatbed | 7 Auto transporter |
| 2 Van/enclosed box | 5 Dump | 8 Garbage/refuse |
| 3 Tank | 6 Concrete mixer | 9 Other |

## COMMERCIAL VEHICLE

### FLATBED LOAD TYPE
1 Farm equipment
2 Construction equipment
3 Building materials
4 Steel coils
5 Other
9 Unknown

**Primary Contributory Cause** - The factor which is most significant in causing the crash, as determined by officer judgement.

**Secondary Contributory Cause** - The second most significant factor contributing to the crash, as determined by officer judgement.

## Example

You determine that vehicle speed is the most significant cause of the crash and wireless phone use is the second most significant cause of the crash. Enter 01 in the "PRIMARY" field and 42 in the "SECONDARY" field.

SR 1050C.310M (REPRINT 10/05)

Printed by authority of the State of Illinois

UNIT 2    UNIT 1

My name is Sophia Chin. I live
at 1801 S. Michigan, in Chicago, IL. My
date of birth is 10/1/77. I am a
resident physician at U of I Hospital,
in Chicago IL. I am familiar with
an accident that occured on 1/18/08,
just south of the intersection of
14th & Michigan, in Chicago. A
construction worker was run over by
a cement truck pulling out of a construction
project at south ~~southwest~~ corner
of 14th & Michigan. This accident
occurred at 1:17 in the afternoon.
This time is based on the time I
called 911 from my cell phone.
I recall it was cold al the roads
were dry. I was going to work at this
time al came from my home. I
recall I was stopped by a construction
worker from this site inorder to
allow a cement truck to pull
out. The construction worker was
standing in the southbound lane
near the double yellow line that
divides north al south bound Michigan.
The construction worker raised his
right hand to stop me. I saw
the cement truck start to pull
out from the construction site, from
the opening along the east side
of the building, at the south end
of the building! The truck was turning
left. I lost sight of the construction

EXHIBIT

3

- 2 -

worker because the cement truck crossed over my line of sight of the worker. The construction worker that stopped me was a caucasion male. He was a yellow hard hat. He was wearing lighter colored construction clothing. As the truck was turning left it began to turn northbound. I could not see the driver of the truck. I than saw 2legs pop up from underneath the rear drivers side tire of the cement truck. The truck was parting nearly northbound at this time. I than saw the rest of the body come out from under the truck. From how this person was dressed as he was also white, I believe this was the same person who was stopping the traffic before. When I saw the body lay in the road it was a little close to the double yellow lines. I called 911 as I ran to this man. The man's head was to the northeast, his feet were to the south west. He was faced up. I checked his pulse at his left wrist. It was a rapid light pulse. His hard hat was crushed over his face. There was steam coming from under his hard hat. I relayed this information to 911 call to paramedics at the scene. I spoke to OSHA ~~when that filled out~~ a little

bit later after I had left the scene. They asked me if the man slipped or fell. I said I don't know because my vision was blocked of the man when he was struck, but, I did see that the roads were dry in the area where this occurred. I have read this statement and it is true and correct to the best of my recollection.

Senior Const.
2/1/08

Eyewitness Description of Construction Site Accident near Michigan Avenue and 14th Street, January 18, 2008

Around 1:15 on Friday, January 18th I was driving east on 14th Street in Chicago with my assistants, Susan Klein and Jonathan Liss. From the 14th Street intersection, I turned right to drive south on Michigan Avenue. As I turned onto Michigan Avenue, a cement mixer ahead of my car in the southbound right lane slowed and stopped to enter a worksite. I turned onto the south bound left lane of Michigan Avenue to continue driving and pass the cement mixer. About fifty feet ahead, a construction worker (Mr. Rudnick) walked onto the south bound lanes of Michigan Avenue from the worksite entrance on the west side of the street. He was facing north, and raised both hands to stop the southbound Michigan Avenue traffic and our car. He was dressed in heavy coveralls, hooded sweat shirt, boots, construction vest and a helmet. It was an extremely cold day. I stopped my car; the back half of the stopped cement mixer was to my right. Another car, a dark green compact sedan, was behind us to the left. While Mr. Rudnick stood in the street, a cement mixer exited the work site, driving behind him to turn onto Michigan Avenue. As the cement mixer entered the street, Mr. Rudnick turned around (to face south- and the truck) and made a step forward. His body jolted, perhaps as if something he was wearing snagged onto the truck. As the truck drove onto the street, Mr. Rudnick was dragged under the rear left wheels of the cement mixer. He fell backwards and to the left; his legs, chest and head were crushed by the weight of the truck. Shocked and stunned by what I saw, I immediately called 911 on my cell phone. Susan Klein, seated in the passenger seat next to me, did the same.

Unaware of the accident, the driver of the cement mixer continued driving, completing a northbound turn onto Michigan Avenue. Jonathan Liss, seated in the back left passenger seat of my car, opened his door, yelling to the driver to stop and that he ran over the construction worker. The truck then stopped, standing northeast of my car, near the intersection of Michigan and 14th street. Ahead of us, the construction worker lay on his back in the street. He did not move.

Connected to 911, I said there was a construction worker run over by a cement mixer and to send an ambulance immediately. The operator patched the call through to the fire department whereas I repeated the plea for an ambulance. 911 said not to move the body. We stood by our car waiting for the paramedics to arrive.

A female witness came over to Mr. Rudnick from the northbound side of Michigan Avenue. She appeared to be wearing hospital scrubs. She knelt down beside Mr. Rudnick. At this point perhaps other construction workers may have came out from the work site to stand near the fallen man. The female witness gently took hold of Mr. Rudnick's left wrist to check for a pulse. Around this time I remember yelling out not to move the body.



The driver of the cement mixer that hit Mr. Rudnick stayed in his truck and slowly backed his vehicle towards scene of the accident. He stopped the truck closer to the fallen worker and jobsite entrance.

Fire engines and emergency vehicles arrived after approximately ten minutes. Firemen quickly gathered to tend to Mr. Rudnick. They carefully removed his helmet, which appeared to be in pieces. A gurney was propped up to shield any onlookers from the scene and a sheet was soon placed over the body. During this time the police also arrived. After I told an officer arriving at the scene we were witnesses to the accident, she asked that we write down our names and telephone numbers on a piece of paper she provided. She left towards the scene of the accident. I gave the sheet of paper to another officer as he walked by our car.

Richard P. Norton, January 23, 2008

(312) 644-8855 (Office)
(847) 256-5895 (Home)

**STATEMENT DESCRIBING THE JAN. 18, 2008 ACCIDENT**
**AT 1411 S. MICHIGAN AVENUE, CHICAGO, IL.**

On Friday, January 18, 2008 at about 1:15pm, Richard Norton, Susan Klein and I left the restaurant on Wabash near 11th Street where we had just had lunch. Richard was driving, Susan was in the front passenger seat and I was sitting in the left-hand rear passenger seat. We traveled south on Wabash before turning east onto 14th Street. We were traveling behind a cement mixing truck, which turned into the right-hand lane of south-bound Michigan Avenue. Richard pulled around into the left-hand lane of south-bound Michigan Avenue and stopped immediately when flagged to do so by a construction worker (Mr. Rudnick).

Our vehicle stopped approximately 50 feet north of Mr. Rudnick, who held up his hands toward us, motioning us to stop. I do not recall whether he was holding a flag or not. He was wearing a hard-hat, some sort of work clothes and a reflective yellow or orange safety vest. At this time a cement mixing truck was exiting the construction site approximately 10-20 feet behind (south) of Mr. Rudnick and was turning toward the north-east in order to enter north-bound Michigan Avenue. At this time the space between Mr. Rudnick's body and the exiting cement truck had decreased due to Mr. Rudnick backing up to re-enter the construction site and the movement of the truck at an ever-increasing angle toward the north. Mr. Rudnick seemed to be standing in the blind-spot of the driver of the cement truck.

Mr. Rudnick was in the midst of turning to face west when he became entangled in the rear-left wheel of the truck. I cannot recall whether an article of his clothing may have become caught on the truck or whether it ran over his foot prior to his fall. Mr. Rudnick fell on his back and the wheel rolled over the left side of his body. I saw his head being flattened by the wheel of the truck. The power of the truck, despite its slow speed, made even a substantially burly man like Mr. Rudnick look as insubstantial as a paper doll. It was a terrible sight. His helmet was shattered and I only saw half of it still on his head. His body lay with his feet pointing toward the south-west and was more or less perpendicular to our vehicle's position. His arm twitched a few times and he was still. A young woman wearing medical scrubs rushed from her stopped north-bound vehicle to take Mr. Rudnick's pulse. Richard and Susan each called 911 on their mobile phones.

At this time the cement truck had pulled into the northbound lane of Michigan Avenue and was stopped at a red light directly parallel to our vehicle. The driver obviously had no clue that he had just killed a man. I got out of our car and yelled at the driver to alert him to the fact that he had just run somebody over, and I was pointing at Mr. Rudnick. The driver was surprised, but looked back toward Mr. Rudnick's body. Realizing what had just happened, he slowly backed up his truck to park at the scene. He remained in his vehicle until the police and paramedics arrived about ten minutes later. The police asked him to step down from the truck and he descended from the cab.

Prior to the arrival of the police, one or two construction workers and a few witnesses rushed to stand over Mr. Rudnick's body. Upon their arrival the paramedics tended to the body. We approached a police officer to say that we had witnessed the accident. She told us to write down our names and contact information on a piece of paper before she walked away. We then gave this information to a different police officer standing nearby, but we were not asked to make any form of a statement. At this point we got in the car and left the scene. It was the most horrific event I have ever witnessed in my life.

**Jonathan R. Liss / January 23, 2008**

512 Lee Street, Apt. 3-S   Evanston, IL 60202   Work: (312) 644-8855   Mobile: (773) 858-5142

EXHIBIT

5

## <u>CONSTRUCTION ACCIDENT AT THE CORNER OF<br>MICHIGAN& 14TH STREETS -- JANUARY 18, 2008</u>

At approximately 1:15 p.m. on January 18, 2008, I, Susan Klein; my boss, Richard P. Norton; and co-worker, Jonathan Liss were in a car that had just turned from 14th Street onto Michigan Avenue heading south. Richard was the driver; I was in the front passenger seat and Jonathan was in the back seat (sitting behind Richard). There was a stopped cement mixer in the right hand lane that was waiting to pull into a construction site on the southwest corner of the block. We, and a small green metallic car that was behind us, pulled into the left-hand lane at which time a construction worker (Mr. Rudnick) stepped into the street (about 50 feet or so ahead of us) and held up his hand for us to stop. We stopped and which time Mr. Rudnick turned his back to us and waived another cement mixer that was exiting the construction site to proceed out onto Michigan Avenue heading north. As the cement mixer started to exit the site, Mr. Rudnick took a small step toward the truck at which time my co-worker Jonathan Liss exclaimed that the truck was hitting the construction worker. I observed the truck roll over Mr. Rudnick's feet. It looked like Mr. Rudnick attempted to step back, but became entangled in the truck. It is possible that his clothing became entangled in the truck. (He was wearing beige construction worker's type clothing with a yellow hardhat and a hood pulled-up over the hard hat. I do not recall whether he was wearing an orange safety vest.) In a matter of 10 seconds or less Mr. Rudnick fell to the ground and the truck's rear wheel rolled-over first his left shoulder then the left top of his head. I observed Mr. Rudnick's head being crushed. Mr. Rudnick then fell to the ground perpendicular to our car and on a slight angle facing southwest and never again moved. The driver of the cement truck was apparently unaware that he had hit someone and continued forward toward the intersection of 14th and Michigan. My co-worker Jonathan Liss exited our vehicle and screamed for him to stop that he had hit someone. The driver then stopped. I, and my boss Richard P. Norton, both called 911 and a woman wearing scrubs that was in a vehicle heading north on Michigan Avenue exited her vehicle and began to take Mr. Rudnick's pulse. A fire truck arrived on the scene about 5-7 minutes later, with an ambulance arriving just after that. I called 911 a second time as cars proceeding north on Michigan Avenue were going around the accident scene. I asked the 911 operator to send some squad cars to block off the street. The squad cars then arrived immediately. The paramedics removed Mr. Rudnick's hardhat, which was bloody and smashed to pieces. Mr. Rudnick was apparently dead as the paramedics very quickly put a sheet over his body. Mr. Norton asked the police officers what we should do in terms of providing a statement of witness to the accident and they told us to give them our names and number, which we provided.

_Susan M. Klein_

Susan M. Klein 1/23/08
(312) 644-8855 (Office)
(312) 670-0227 (Home)

EXHIBIT
6



# CONSTRUCTION & GENERAL LABORERS'
## DISTRICT COUNCIL OF CHICAGO AND VICINITY
AFFILIATED WITH THE LABORERS' INTERNATIONAL UNION OF NORTH AMERICA
LOCALS 1, 2, 4, 5, 6, 25, 75, 76, 96, 118, 149, 152, 225, 269, 288, 582, 681, 1001, 1035, 1092

**JAMES P. CONNOLLY**
BUSINESS MANAGER

**FRANK RILEY**
PRESIDENT/
SECRETARY-TREASURER

May 30, 2007

To All Employers Covered by Collective Bargaining Agreements

RE:   Increase in Hourly Wage and Fringe Benefits
      Effective June 1, 2007 through May 31, 2008

Under the terms of your collective bargaining agreement with
Construction and General Laborers' District Council of Chicago and
Vicinity, there is an overall increase of $3.00 effective June 1, 2007.

The base wage was increased by one dollar and sixty cents ($1.60) to
$33.15 per hour. The Health and Welfare contribution is increased by
fifty-one cents (.51¢) to $7.97 per hour worked. The Pension Fund
contribution is increased by eighty-four cents (.84¢) to $5.68 per hour
worked. The Training Fund contribution is increased by five cents (.5¢) to
$0.22 per hour worked.

Therefore the following wage and fringe rates and dues deductions will be
effective June 1, 2007:

| | |
|---|---|
| BASE WAGE | $33.15 per hour worked |
| WELFARE FUND | $7.97 per hour worked |
| PENSION FUND | $5.68 per hour worked |
| TRAINING FUND | $0.22 per hour worked |
| LECET | $0.05 per hour worked |

(Laborers' Employers Cooperation and Education Trust)

| | |
|---|---|
| LDCLMCC | $0.12 per hour worked |

(Laborers' District Council Laborers' Management Cooperation Committee)

WORK DUES DEDUCTION  2.75% of gross wages

INDUSTRY FUND contributions will vary based on Association and
additional LECET contributions remain unchanged.

Very truly yours,

James P. Connolly
Business Manager

Frank Riley
President/Secretary-Treasurer

**EXHIBIT**
7

**LIUNA
INNOVATION
AT WORK**

999 McCLINTOCK DRIVE  ·  SUITE 300  ·  BURR RIDGE, ILLINOIS 60527
PHONE: 630/655-8289  ·  FAX: 630/655-8853





708-562-0200
field dept.



# CONSTRUCTION & GENERAL LABORERS'
## DISTRICT COUNCIL OF CHICAGO AND VICINITY

AFFILIATED WITH THE LABORERS' INTERNATIONAL UNION OF NORTH AMERICA
LOCALS 1, 2, 4, 5, 6, 25, 75, 76, 96, 118, 149, 152, 225, 269, 288, 582, 681, 1001, 1035, 1092

May 6, 2008

**JAMES P. CONNOLLY**
BUSINESS MANAGER

•

**RICHARD SHERMAN**
SECRETARY-TREASURER

•

**JOSEPH COCONATO**
PRESIDENT

To All Employers Covered by Collective Bargaining Agreements
Reporting to **Westchester Funds Only**

RE:   Increase in Hourly Wage and Fringe Benefits
      Effective June 1, 2008 through May 31, 2009

Under the terms of your collective bargaining agreement with Construction and General Laborers' District Council of Chicago and Vicinity, there is an overall increase of $3.00 effective June 1, 2008.

The base wage was increased by one dollar and sixty cents ($1.60) to $34.75 per hour. The Health and Welfare contribution is increased by eighty-six cents (86¢) to $8.83 per hour worked. The Pension Fund contribution is increased by forty-nine cents (49¢) to $6.17 per hour worked. The Training Fund contribution is increased by five cents (5¢) to $0.27 per hour worked.

Therefore the following wage and fringe rates and dues deductions will be effective June 1, 2008:

| | |
|---|---|
| BASE WAGE | $34.75 per hour worked |
| WELFARE FUND | $8.83 per hour worked |
| PENSION FUND | $6.17 per hour worked |
| TRAINING FUND | $0.27 per hour worked |
| LECET | $0.05 per hour worked |

(Laborers' Employers Cooperation and Education Trust)

LDCLMCC             $0.12 per hour worked
(Laborers' District Council Laborers' Management Cooperation Committee)

WORK DUES DEDUCTION  2.75% of gross wages

INDUSTRY FUND contributions will vary based on Association and additional LECET contributions remain unchanged.

Very truly yours,

James P. Connolly
Business Manager

Richard Sherman
Secretary-Treasurer

EXHIBIT
8

**LIUNA**
**INNOVATION**
**AT WORK**

999 McCLINTOCK DRIVE  •  SUITE 300  •  BURR RIDGE, ILLINOIS 60527
PHONE: 630/655-8289  •  FAX: 630/655-8853

